**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANTONIO GARCIA,, Petitioner, v. SCOTT FRAUENHEIM, Warden, et al., Respondents. | Case No. 1:11-cv-001936-SKO-HC<br><br>ORDER DIRECTING THE SUBSTITUTION OF SCOTT FRAUENHEIM AS RESPONDENT<br><br>ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS (DOC. 1), DIRECTING THE ENTRY OF JUDGMENT FOR RESPONDENT, AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY |

Petitioner is a state prisoner proceeding pro se and in forma pauperis with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Pursuant to 28 U.S.C. 636(c)(1), the parties have consented to the jurisdiction of the United States Magistrate Judge to conduct all further proceedings in the case, including the entry of final judgment, by manifesting their consent in writings signed by the parties or their representatives and filed by Petitioner on December 27, 2011, and on behalf of Respondent on December 21, 2011.

Pending before the Court is the petition, which was filed on November 15, 2011, and transferred to this Court on November 21, 2011. Respondent filed an answer on February 22, 2012, and

Petitioner filed a traverse on March 5, 2012. In the petition, Petitioner challenges the sufficiency of the evidence to support a conviction.

I. Jurisdiction and Order to Substitute Respondent

Because the petition was filed after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the AEDPA applies in this proceeding. Lindh v. Murphy, 521 U.S. 320, 327 (1997); Furman v. Wood, 190 F.3d 1002, 1004 (9th Cir. 1999).

The challenged judgment was rendered by the Superior Court of the State of California, County of Fresno (FCSC), which is located within the territorial jurisdiction of this Court. 28 U.S.C. §§ 84(b), 2254(a), 2241(a), (d). Further, Petitioner claims that in the course of the proceedings resulting in his conviction, he suffered violations of his constitutional rights. Accordingly, the Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. §§ 2254(a) and 2241(c)(3), which authorize a district court to entertain a petition for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court only on the ground that the custody is in violation of the Constitution, laws, or treaties of the United States. Williams v. Taylor, 529 U.S. 362, 375 n.7 (2000); Wilson v. Corcoran, 562 U.S. B, -, 131 S.Ct. 13, 16 (2010) (per curiam).

An answer was filed on behalf of Respondent G. Swarthout, who, pursuant to the judgment, had custody of Petitioner at the California State Prison at Solano, his institution of confinement at the time the petition and answer were filed. (Doc. 15.) Petitioner thus named as a respondent a person who had custody of Petitioner

within the meaning of 28 U.S.C. § 2242 and Rule 2(a) of the Rules Governing Section 2254 Cases in the District Courts (Habeas Rules). See, Stanley v. California Supreme Court, 21 F.3d 359, 360 (9th Cir. 1994). Petitioner's transfer to the Pleasant Valley State Prison (PVSP) after the petition was filed does not affect this Court's jurisdiction. Jurisdiction attaches on the initial filing for habeas corpus relief, and is not destroyed by a transfer of the petitioner and the accompanying custodial change. Francis v. Rison, 894 F.2d 353, 354 (9th Cir. 1990) (citing Smith v. Campbell, 450 F.2d 829, 834 (9th Cir. 1971)). Accordingly, the Court concludes that it has jurisdiction over the person of the Respondent.

However, in view of the fact that the warden at PVSP is Scott Frauenheim, it is ORDERED that Scott Frauenheim, Warden of PVSP, be SUBSTITUTED as Respondent pursuant to Fed. R. Civ. P. 25.[1]

II. Introduction

Petitioner is serving an indeterminate term of fifteen years to life after his conviction in FCSC case number F09900507 of aggravated mayhem in violation Cal. Pen. Code § 205, assault by means likely to produce great bodily injury in violation of § 245(a)(1)[2], and street terrorism in violation of § 186.22(a) for beating another prisoner in the Fresno County Jail. The jury found that the offenses were committed for the benefit of a criminal street gang within the meaning of § 186.22(b)(1). (Ans., ex. A,

---

[1] Fed. R. Civ. P. 25(d) provides that when a public officer who is a party to a civil action in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending, the officer's successor is automatically substituted as a party. It further provides that the Court may order substitution at any time, but the absence of such an order does not affect the substitution.

[2] All further references to state statutes are to the Penal Code unless otherwise indicated.

doc. 15-1, 3; pet., doc. 1, 1.) On August 5, 2011, the Court of Appeal of the State of California, Fifth Appellate District (CCA) affirmed the judgment in a reasoned decision. (Ans., exh. A, doc. 15-1.) Petitioner's petition for review was denied by the California Supreme Court (CSC) without a statement or reasoning or authority on October 12, 2011. (LD 7.)[3]

Petitioner contends the evidence was insufficient to support his conviction of aggravated mayhem. Respondent asserts that the state court's decision that the evidence was sufficient was not contrary to, or an unreasonable application of, clearly established federal law within the meaning of § 2254(d)(1), and thus the petition should be denied.

III. Factual Summary

In a habeas proceeding brought by a person in custody pursuant to a judgment of a state court, a determination of a factual issue made by a state court shall be presumed to be correct; the petitioner has the burden of producing clear and convincing evidence to rebut the presumption of correctness. 28 U.S.C. § 2254(e)(1); Sanders v. Lamarque, 357 F.3d 943, 947-48 (9th Cir. 2004). This presumption applies to a statement of facts drawn from a state appellate court's decision. Moses v. Payne, 555 F.3d 742, 746 n.1 (9th Cir. 2009). The following statement of facts is taken from the opinion of the CCA in People v. Antonio Garcia, case number F060258, filed on August 5, 2011:

**FACTS**

Garcia and the victim, Gerardo Gomez, were housed in "Pod D," a special unit within the Fresno County Jail. Pod D is

[3] "LD" refers to documents lodged by Respondent in support of the answer

a segregated unit that consists entirely of Norteño gang members. The Norteño gang is affiliated with the Nuestra Familia (NF), a prison gang that oversees other Northerner Hispanic criminal street gangs. NF is structured under a constitution and code of rules, which members are required to abide by. Below the NF are the Norteños, who have their own set of rules called the 14 bonds. If a Norteño member is accused of breaking one of those bonds, they are given due process that allows the accused to defend themselves against the accusations. Gomez was designated by the Norteño gang as an "O.A.," which stands for overall, meaning he was the "supervisor" of the other gang members in the unit. There were two overalls in Pod D at the time of the incident, and each were considered to be of equal rank.

At trial, Gomez testified that on November 13, 2008, he was asked to go into a cell to smoke a cigarette with other gang members. While smoking, Garcia entered the cell and slammed Gomez to the ground, and the other gang members attempted to "remove" him. Removal is a two-phase process whereby a gang member that is no longer in good standing with the gang is "removed" from the gang's segregated unit.

Prior to removal, the Norteño rules require the accused be given due process, which involves a "judge" who weighs the evidence, and determines the guilt and punishment of the accused. The Norteño gang is structured in a way that prohibits removal without an order from a high-ranking gang member. The first phase of the removal process involves "stickers," who are trained to stab the victim in their vital organs. The second phase consists of "bombers," who beat the victim to ensure his death, as well as to give the stickers time to clean up and dispose of their weapons. Lookouts are also positioned outside of the place where the attack is to occur.

A Norteño gang member involved in the attack, as well as a police officer who is considered a gang expert, testified that gang members are also trained to carve "bitch" or "puto" marks into the victim's face, to let others know that the victim is no longer in good standing within the gang.

During Gomez's removal, he was stabbed multiple times throughout his body, but the attackers missed his vital organs. The attack on Gomez resulted in his left eye being swollen shut, multiple stab wounds, and a piece of "meat"

> hanging from his cheek. A local hospital's medical staff closed some of his wounds with staples and stitches. Gomez suffered permanent scars down his leg, thigh, forehead, and below his left eye. Further, Gomez testified that after the attack occurred, he lost sensation in an area of his face below his left eye.
>
> Other gang members, who had already pled guilty to attempted murder for the same incident, testified that Garcia was not in the cell at the time of the attack. One of the gang members testified that the attack on Gomez was not a removal, but instead related to a personal dispute. Conversely, another gang member testified that he had received a "huila" FN2 prior to the attack that invited him to participate in a removal. He further testified that he was responsible for overseeing the lookouts during the attack, and he saw Garcia enter the cell after Gomez.
>
> FN2. A "huila" is a written form of communication that the gang uses to pass messages between members.

(Doc. 15-1, 3-5.)

IV. Insufficiency of the Evidence of Aggravated Mayhem

Petitioner argues that there is insufficient evidence of aggravated mayhem. First, he contends that there was insufficient evidence that he specifically intended to cause permanent disability or disfigurement because there was no controlled and directed or focused attack of limited scope by Petitioner; the evidence shows no more than an indiscriminate attack. Next, he claims that the evidence was insufficient to support a finding that there was permanent disfigurement because there was no expert medical testimony.

A. The State Court Decision

The pertinent part of the state court's decision on the sufficiency of the evidence is as follows:

**DISCUSSION**

Garcia argues there is insufficient evidence to support his conviction for aggravated mayhem.FN3 Specifically, Garcia asserts he did not have the specific intent to permanently disfigure Gomez, and further, that there is insufficient evidence of a permanent disfigurement.

> FN3. Garcia does not challenge his convictions for assault by means of force likely to produce great bodily injury and street terrorism, or the gang enhancement.

In reviewing a claim of insufficiency of the evidence, the appellate court reviews the record to determine whether it contains substantial evidence to support the finding that the defendant was guilty beyond a reasonable doubt. (*People v. Johnson* (1980) 26 Cal.3d 557, 578.) "Before the judgment of the trial court can be set aside for insufficiency of the evidence to support the verdict of the jury, it must clearly appear that upon no hypothesis whatever is there sufficient substantial evidence to support it." (*People v. Redmond* (1969) 71 Cal.2d 745, 755.) The substantial evidence test requires the appellate court to view the evidence in a light most favorable to the judgment below. (*People v. Rich* (1988) 45 Cal.3d 1036, 1081-1082.) "It is the exclusive province of the trier of fact to assess the credibility of the witnesses, resolve conflicts in the testimony and weigh the evidence." (*People v. Vasco (2005)* 131 Cal.App.4th 137, 161.) "'The standard of review is the same in cases in which the prosecution relies mainly on circumstantial evidence.'" (*People v. Story* (2009) 45 Cal.4th 1282, 1296.)

Section 205 states, in pertinent part: "A person is guilty of aggravated mayhem when he or she unlawfully, under circumstances manifesting extreme indifference to the physical or psychological well-being of another person, intentionally causes permanent disability or disfigurement of another human being or deprives a human being of a limb, organ, or member of his or her body." Aggravated mayhem is a specific intent crime which requires proof that the defendant intended to cause the permanent injury. (*People v. Park* (2003) 112 Cal.App.4th 61, 64.) "Evidence that shows no more than an 'indiscriminate attack' is insufficient to prove the required specific intent." (*Ibid.*) Finally, the "specific intent to maim may not be inferred solely from evidence that the injury inflicted

actually constitutes mayhem; instead, there must be other facts and circumstances which support an inference of intent to maim rather than to attack indiscriminately." (*Ibid.*)

Garcia argues that his crime does not constitute aggravated mayhem because the assault was an "explosion of violence" that was intended to kill Gomez. We disagree.

There is ample evidence in the instant case to support the jury's inference that the attackers intended to specifically maim rather than attack indiscriminately. First, the victim, a former Norteño member who had participated in removals, testified the assault was a removal gone wrong. Another gang member involved in the attack stated he received a "huila" that invited him to participate in a removal that evening. It can be inferred from the testimony of the gang members that there are two separate intents when removing a member: murder and carving "bitch marks." These marks were intended to be a scarlet letter telling others that the person was no longer in good standing with the gang, thereby implying permanence. Given the extensive testimony, the facts and circumstances support an inference that the attackers intended to maim. Thus, there was sufficient evidence for a reasonable jury to conclude that the attack was intended to permanently disfigure the victim.

We also reject the claim that the victim did not sustain a permanent disabling or disfiguring injury as provided by the statute.

The word "disfigure" is defined as: "to make less complete, perfect, or beautiful in appearance or character." (Webster's 3d New Internat. Dict. (1986) p. 649.) To prove mayhem based on a disfiguring injury, the injury must be permanent, but not necessarily apparent, or visible to the naked eye. (See *People v. Hill* (1994) 23 Cal.App.4th 1566, 1571.) "[T]he possibility that a victim's disfigurement might be alleviated through reconstructive surgery is no bar to a finding of 'permanent' injury." (*People v.. Williams* (1996) 46 Cal.App.4th 1767, 1774.) In *People v. Keenan* (1991) 227 Cal.App.3d 26, 35-36), the First District Court of Appeal held that cigarette burns on an unexposed portion of the victim's body, still visible three and one-half months after the attack, constituted a permanent disfigurement.

> The court explained, “if the burns had been inflicted on [the victim's] face there would be no question that mayhem had been committed.” (*Id.* at p. 36.) Further, three- to five-inch facial scars apparent at the time of trial have been held to constitute mayhem. (*People v. Newble* (1981) 120 Cal.App.3d 444, 453; *Goodman v. Superior Court* (1978) 84 Cal.App.3d 621, 623.)
>
> In the instant case, the victim's injuries included a scar and permanent numbness below his left eye. The jury was familiar with what happened to the victim during the attack; they were shown “before and after” pictures of the victim, and saw his injuries firsthand when he testified at trial. As the jury is the finder of fact, it is their job to weigh the credibility of witnesses and draw reasonable inferences from the evidence. (See *People v. Hamlin* (2009) 170 Cal.App.4th 1412, 1463.) There was ample evidence from which a reasonable trier of fact could have found that the victim suffered a permanent disfigurement. Accordingly, there was sufficient evidence to support a conviction for aggravated mayhem.

(Doc. 15-1, 5-8.)

B. Standard of Decision and Scope of Review

1. Section 2254

Title 28 U.S.C. § 2254 provides in pertinent part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Clearly established federal law refers to the holdings, as distinct from the dicta, of the decisions of the Supreme Court as of the time of the relevant state court decision. Cullen v. Pinholster, - U.S. -, 131 S.Ct. 1388, 1399 (2011); Lockyer v. Andrade, 538 U.S. 63, 71 (2003); Williams v. Taylor, 529 U.S. 362, 412 (2000).

A state court's decision contravenes clearly established Supreme Court precedent if it reaches a legal conclusion opposite to, or substantially different from, the Supreme Court's or concludes differently on a materially indistinguishable set of facts. Williams v. Taylor, 529 U.S. at 405-06. The state court need not have cited Supreme Court precedent or have been aware of it, "so long as neither the reasoning nor the result of the state-court decision contradicts [it]." Early v. Packer, 537 U.S. 3, 8 (2002).

A state court unreasonably applies clearly established federal law if it either 1) correctly identifies the governing rule but applies it to a new set of facts in an objectively unreasonable manner, or 2) extends or fails to extend a clearly established legal principle to a new context in an objectively unreasonable manner. Hernandez v. Small, 282 F.3d 1132, 1142 (9th Cir. 2002); see, Williams, 529 U.S. at 407. An application of clearly established federal law is unreasonable only if it is objectively unreasonable; an incorrect or inaccurate application is not necessarily

unreasonable. Williams, 529 U.S. at 410. A state court's determination that a claim lacks merit precludes federal habeas relief as long as fairminded jurists could disagree on the correctness of the state court's decision. Harrington v. Richter, 562 U.S. -, 131 S.Ct. 770, 786 (2011). Even a strong case for relief does not render the state court's conclusions unreasonable. Id. To obtain federal habeas relief, a state prisoner must show that the state court's ruling on a claim was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 786-87. The § 2254(d) standards are "highly deferential standard[s] for evaluating state-court rulings" which require that state court decisions be given the benefit of the doubt, and the Petitioner bear the burden of proof. Cullen v. Pinholster, 131 S.Ct. at 1398.

Further, habeas relief is not appropriate unless each ground supporting the state court decision is examined and found to be unreasonable under the AEDPA. Wetzel v. Lambert, --U.S.--, 132 S.Ct. 1195, 1199 (2012).

In assessing under section 2254(d)(1) whether the state court's legal conclusion was contrary to or an unreasonable application of federal law, "review... is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 131 S.Ct. at 1398. Evidence introduced in federal court

has no bearing on review pursuant to § 2254(d)(1). Id. at 1400. As previously noted, 28 U.S.C. § 2254(e)(1) provides that in a habeas proceeding brought by a person in custody pursuant to a judgment of a state court, a determination of a factual issue made by a state court shall be presumed to be correct; the petitioner has the burden of producing clear and convincing evidence to rebut the presumption of correctness. A state court decision on the merits and based on a factual determination will not be overturned on factual grounds unless it was objectively unreasonable in light of the evidence presented in the state proceedings. Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

With respect to each claim, the last reasoned decision must be identified to analyze the state court decision pursuant to 28 U.S.C. § 2254(d)(1). Barker v. Fleming, 423 F.3d 1085, 1092 n.3 (9th Cir. 2005); Bailey v. Rae, 339 F.3d 1107, 1112-13 (9th Cir. 2003). Here, the last reasoned decision on Petitioner's claim was the CCA's decision previously set forth.

2. Insufficiency of the Evidence

To determine whether a conviction violates the constitutional guarantee of due process of law because of insufficient evidence, a federal court ruling on a petition for writ of habeas corpus must determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 20-21 (1979); Windham v. Merkle, 163 F.3d 1092, 1101 (9th Cir. 1998); Jones v. Wood, 114 F.3d 1002, 1008

(9th Cir. 1997).

All evidence must be considered in the light most favorable to the prosecution. Jackson, 443 U.S. at 319; Jones, 114 F.3d at 1008. It is the trier of fact's responsibility to resolve conflicting testimony, weigh evidence, and draw reasonable inferences from the facts; thus, it must be assumed that the trier resolved all conflicts in a manner that supports the verdict. Jackson v. Virginia, 443 U.S. at 319; Jones, 114 F.3d at 1008. The relevant inquiry is not whether the evidence excludes every hypothesis except guilt, but rather whether the jury could reasonably arrive at its verdict. United States v. Mares, 940 F.2d 455, 458 (9th Cir. 1991). Circumstantial evidence and the inferences reasonably drawn therefrom can be sufficient to prove any fact and to sustain a conviction, although mere suspicion or speculation does not rise to the level of sufficient evidence. United States v. Lennick, 18 F.3d 814, 820 (9th Cir. 1994); United States v. Stauffer, 922 F.2d 508, 514 (9th Cir. 1990); see, Jones v. Wood, 207 F.3d at 563. The court must base its determination of the sufficiency of the evidence from a review of the record. Jackson at 324.

The Jackson standard must be applied with reference to the substantive elements of the criminal offense as defined by state law. Jackson, 443 U.S. at 324 n.16; Windham, 163 F.3d at 1101. However, the minimum amount of evidence that the Due Process Clause requires to prove an offense is purely a matter of federal law.

Coleman v. Johnson, - U.S. -, 132 S.Ct. 2060, 2064 (2012) (per curiam). For example, under Jackson, juries have broad discretion to decide what inferences to draw and are required only to draw reasonable inferences from basic facts to ultimate facts. Id.

Further, under the AEDPA, federal courts must apply the standards of Jackson with an additional layer of deference. Coleman v. Johnson, - U.S. -, 132 S.Ct. 2060, 2062 (2012); Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005). This Court thus asks whether the state court decision being reviewed reflected an objectively unreasonable application of the Jackson standards to the facts of the case. Coleman v. Johnson, 132 S.Ct. at 2062; Juan H. v. Allen, 408 F.3d at 1275. The determination of the state court of last review on a question of the sufficiency of the evidence is entitled to considerable deference under 28 U.S.C. § 2254(d). Coleman v. Johnson, 132 S.Ct. at 2065.

Here, the state court articulated legal standards that were consistent with the governing standards of Jackson v. Virginia. To the extent that the state court applied or interpreted state law, this Court is bound by the state court's decision. The Court accepts a state court's interpretation of state law. Langford v. Day, 110 F.3d 1180, 1389 (9th Cir. 1996). In a habeas corpus proceeding, this Court is bound by the California Supreme Court's interpretation of California law unless the interpretation is deemed untenable or a veiled attempt to avoid review of federal questions. Murtishaw v. Woodford, 255 F.3d 926, 964 (9th Cir. 2001). Here,

there is no indication that there was any attempt to avoid review of federal questions.

The state court's application of Jackson v. Virginia with respect to the issue of specific intent to maim was not contrary to Jackson and was not an unreasonable application of it. A gang expert testified to the methods and purpose of a gang removal, which included permanently marking the face to show removal from the gang. (LD 3, 468, 482-84, 508-11.) Inmate Cano placed Petitioner and the other gang members at the scene, and a correctional officer identified Petitioner from a surveillance video as the person holding the door; the victim testified that Petitioner took him to the ground. Testimony from the victim, inmate Cano, and the gang member who had received a "huila" inviting him to a removal warranted a rational trier of fact in inferring that the purposes of the attack included gang-related objectives of killing the victim and inflicting injuries that would leave symbolic marks on the victim's flesh. Similarly, a rational trier of fact could reasonably infer that the marks, which were intended to provide notice that the victim was not in good standing with the gang, were intended to be permanent. The state court's application of Jackson with respect to the sufficiency of the evidence of intent permanently to disfigure the victim was not objectively unreasonable.

Likewise, the state court's decision with respect to the presence of permanent disfigurement was not contrary to, or an unreasonable application, of Jackson. Although there was no medical testimony concerning the permanence of the scar and the lack of sensation in the cheek, a rational trier of fact was warranted in

concluding that the victim had suffered permanent disfigurement from the circumstances of the attack, considered in light of nature, extent, and duration of the injuries as well as the gang's purpose to cut the face so as to mark the victim's standing in the gang.

There is no merit to Petitioner's claim that in light of the evidence before the state court, the state court decision was based on an unreasonable determination of fact within the meaning of 28 U.S.C. § 2254(d)(2). It is established that the state court's determination must be not merely incorrect or erroneous, but rather objectively unreasonable. Taylor v. Maddox, 366 F.3d 992, 999 (9th Cir. 2004). For relief to be granted, a federal habeas court must find that the trial court's factual determination was such that a reasonable fact finder could not have made the finding; that reasonable minds might disagree with the determination or have a basis to question the finding is not sufficient. Rice v. Collins, 546 U.S. 333, 340-42 (2006). To conclude that a state court finding is unsupported by substantial evidence, a federal habeas court must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record. Taylor v. Maddox, 366 F.3d at 1000. To determine that a state court's fact finding process is defective in some material way or non-existent, a federal habeas court must be satisfied that any appellate court would be unreasonable in holding that the state court's fact finding process was adequate. Id.

Here, there was some evidence that was exculpatory. However, as demonstrated by the foregoing analysis, the record contained significant evidence that Petitioner participated in a concerted attack on the victim with the purpose of permanently disfiguring the

victim for gang purposes, and that the attack resulted in permanent disfigurement. Applying accepted standards of review that assume that the trier of fact resolved factual conflicts in favor of the judgment, it cannot be said that any appellate court would be unreasonable in holding that the state court's fact-finding process was adequate.

Petitioner has not shown that there was an unreasonable determination of fact based on the evidence before the state court. Accordingly, Petitioner's sufficiency of the evidence claim or claims will be denied.

V. Certificate of Appealability

Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the Court of Appeals from the final order in a habeas proceeding in which the detention complained of arises out of process issued by a state court. 28 U.S.C. § 2253(c)(1)(A); Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). A district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Rule 11(a) of the Rules Governing Section 2254 Cases.

A certificate of appealability may issue only if the applicant makes a substantial showing of the denial of a constitutional right. § 2253(c)(2). Under this standard, a petitioner must show that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. Miller-El v. Cockrell, 537 U.S. at 336 (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)). A certificate should issue if the Petitioner shows that jurists of reason would find it debatable whether: (1)

the petition states a valid claim of the denial of a constitutional right, and (2) the district court was correct in any procedural ruling. Slack v. McDaniel, 529 U.S. 473, 483-84 (2000).

In determining this issue, a court conducts an overview of the claims in the habeas petition, generally assesses their merits, and determines whether the resolution was debatable among jurists of reason or wrong. Id. An applicant must show more than an absence of frivolity or the existence of mere good faith; however, the applicant need not show that the appeal will succeed. Miller-El v. Cockrell, 537 U.S. at 338.

Here, it does not appear that reasonable jurists could debate whether the petition should have been resolved in a different manner. Petitioner has not made a substantial showing of the denial of a constitutional right. Therefore, the Court will decline to issue a certificate of appealability.

VI. Disposition

Accordingly, it is ORDERED that:

1) The petition for writ of habeas corpus is DENIED; and

2) The Clerk is DIRECTED to enter judgment for Respondent; and

3) The court DECLINES to issue a certificate of appealability.

IT IS SO ORDERED.

Dated: **May 13, 2014**

**/s/ Sheila K. Oberto**
UNITED STATES MAGISTRATE JUDGE